Yes, Your Honor, Jeff Giles, who is co-counsel with Terry Thomas, on behalf of the Chapmans, thank you for hearing me today. And I would like to start off by saying I was asked to do this because Mr. Thomas wanted a second pair of eyes to look at his appeal. He's a sole practitioner, as am I. And I would like to bring up an issue that wasn't briefed before. It has to do with federal jurisdiction. And federal jurisdiction is something that can't be waived or stipulated to or gained by estoppel. It has to really be there. I think Judge Jones missed that one. It's not addressed in his order. There is no federal question raised in this case, but there are diverse parties. And the problem lies with the fact that there is not a sufficient dollar amount in controversy. The case cited in the removing papers by Deutsche Bank, Glenwood Mutual Light Company, says, where equitable leaf is sought, jurisdictional amount is to be tested by the value of the object to be gained by the complainant. Now, this house is worth more than $100,000. No question about that. But we're not asking for a free house. We're asking that the foreclosure be declared invalid because of irregularities, which means the house goes back to the Chapman's and the lien reattaches as a matter of State law automatically. So what's an issue here? Were you asking for punitives, too, which could put it up above? He asked for punitives in the complaint. I think that was probably a mistake. He shouldn't have asked for punitives. I don't think there's anything under Nevada law which requires fraud, malice or oppression to justify punitive damages. But I believe it was prayed for in the complaint. But the relief prayed for in the complaint was the undoing of the foreclosure. The monthly payment was $1,500 a month and probably was a year or so in arrears. That's not even $20,000. So for that reason alone, you can't get to the $75,000 amount. That wasn't briefed by Mr. Thomas, unfortunately. And because it does go to Federal jurisdiction, I raise it here, and I apologize for it not being brought forth previously. But Federal jurisdiction is something that could be raised as an initial matter in the United States Supreme Court. It has to be there on its own, and it's not something that can be stipulated to or gotten by estoppel. Is there another problem, Mr. Giles, because the notice of removal alleges the residency of the individual parties and not their citizenship? Well, the residency, I've always taken to be coextensive with citizenship. And I know the 14th Amendment talks in terms of citizenship. I don't think Ninth Circuit law takes them as coextensive. I can't address that because I just don't know the answer to that issue. I haven't looked at it. I've always taken them as coextensive, but I assume that there's some Venn diagram overlap where they're not, and I don't know what that would be. I would like to reserve five minutes, actually, so I'm going to be brief here. Before you move on, let me ask you on behalf of the Court, you and opposing counsel, if you would each submit a 28-J letter on the issue of jurisdiction that you've just raised and in diversity, not to exceed three pages each. And if you could do that within, say, the next 72 hours, we'd appreciate it. That will enable us to be better informed. I think it's not fair to kind of – I understand why you're doing it now, and we'd appreciate the fact that jurisdiction is always an issue. But in fairness to your opposing counsel, we think that you both should file contemporaneous briefs and let us know what you think about that issue. Sure. I will do that, Your Honor, tomorrow. The other less important thing, but very significant, is the issue of abstention, which was briefed. This is a case that goes to the federal courts – this kind of case goes to the federal courts repeatedly. And the state courts of Nevada have really been deprived of their ability to rule on novel and new questions of state law under Section 107.080, the foreclosure statute. These are things that this Court undoubtedly has the power to address, but on basis of comedy and federalism and respect for state courts' rights in certain traditional areas, it shouldn't do it. Can we go to a little more specific doctrine, and that is the prior exclusive jurisdiction doctrine? I think you're familiar with that. Are you not? Yes. Prior exclusive jurisdiction doctrine. The case has to have jurisdiction, so it could be brought here initially or not at all. Well, it really goes to the issue of whether under Nevada law this is an action in rem or quasi in rem and what impact that might have for purposes of which court had jurisdiction. Under the prior exclusive jurisdiction doctrine, if you have a court that took jurisdiction first, say, for example, say that Nevada took it first and it's a quasi or in rem or in rem action, then under the prior exclusive jurisdiction doctrine, we would defer to them. We would rescind it back because of the doctrine that was established in a number of our cases and, of course, U.S. Supreme Court cases. Are you familiar with that doctrine? That's the Queen Alia doctrine I believe you're referring to, and that was in the opinion in the Knothel case, which you asked us to read and be prepared to address. Right. And I think that's entirely correct. This is a proceeding in rem. The court, the Ninth Circuit in that case, in Knothel, said it was a matter in rem, and I think likewise this is. This is — this has to do with — Given that the Ninth Circuit was applying Hawaii law or looking to Hawaii law in that case, what impact should that have here where Nevada law is really at issue? Excellent question, Your Honor. The court in that case found the Hawaiian law was well settled. For Hawaii, right? For Hawaii. This law of Nevada is not well settled. And at the very end of the case, the judge, if I could quote it, it said that — I can't put my finger on it this minute. The — if we see no merit to the Max claims that Hawaii law is unsettled, well, had they seen merits to that claim that Hawaii law was unsettled, then they should have stayed it. In this case, they should have abstained. The whole issue is, if it's a settled matter of State law, Federal courts go ahead and apply it. No problem. When it's not a settled matter, when it's open, then it really should be a matter of deference to the State authorities, the State court, the Nevada Supreme Court in specific, to make those determinations. And that's, I think, what this case hinges on. Did the Robinson case from the Nevada Supreme Court settle this question? I don't think so. Why not? I read the Robinson case ten times, and the language of the 1890s is a little obscure. I think that case basically says, when you're kicking somebody off land that — because of a defect in the way the title of the land was secured, you have to have personal jurisdiction over the nonresident defendants. When you don't have that, it's a quasi-in rem case. I just don't think that's applicable here. What about, for example, the First Circuit case, Fairway Capital Corporation, and it indicates that the prevailing view is that unlawful detainer actions and ejectment actions are also in rem or quasi-in rem. Does that apply here, that reasoning? If that's the case, no question, we win. Counsel, Judge Gould, if I could ask you a question related to Judge Smith and the question Judge St. Eve asked. It's just a simple question. It's the only one I've got on your argument. Should we certify to the Nevada Supreme Court whether unlawful detainer actions, and also a second question, whether quiet title actions under Nevada state law are both in rem or — are either of those in rem or quasi-in rem? Absolutely. Certify that. Absolutely. There's only a problem if there's a — if there are two in rem actions. Absolutely. It should be certified to the Nevada Supreme Court under Rule 5A. It's one of the most important aspects of the federal-state relationships in deciding matters of exclusive state law. It is for the Nevada Supreme Court to decide. And I would point the Court to a very important case, which I will put in my 28J letter. This whole thing of federal courts deciding state law is becoming quite nettling in Nevada. The chief judge, Judge Hunt, recently issued a decision, and I don't know if it's been reported, it's so recent, where he says the ever-expanding body of case law in this district holds that Nevada law governing nontraditional foreclosure does not require a lender to produce the original note. That's a nice and novel issue of state law. He cites five other federal diversity cases for that proposition. And with all due respect, it's not up to the federal courts to decide this. This should be certified to the Nevada Supreme Court. Unless we view Robinson v. Kine from the Nevada Supreme Court of 1897 as having settled the issue. That's quite right. You can probably see better what that case means than I do. I have parsed that thing. I don't know if it was a deed or a deed of trust they were talking about. They use the terms interchangeably. It's very difficult to see. Maybe this was a quasi-in-rem case back in the days when quasi-in-rem cases existed before the long-arm statutes, before Schaffner v. Heitner. They probably wrote it with a quill pen. Not on a word processor. I can guarantee you. Those were the days when an in-rem was really an in-rem, right? I think that's right. And the whole point of diversity jurisdiction is it's about people, citizens of different places, complaining about amounts of money in excess of a certain dollar amount. There's really no in-rem component of it unless you bootstrap it in with supplemental jurisdiction under 1367. Okay. And I see my time has come. I'm sorry. That's okay. We appreciate your argument. We'll now hear from the government. I'm sorry. It's not from the government. Georgia Bank. Excuse me. Got the wrong case there. Good morning, Your Honors. May it please the Court. I think perhaps to save time, I'll jump directly to the issues that have been raised thus far. Going back to Knopfler, as the Court has correctly pointed out, that is Hawaii law. Should we extend that decision to apply in this context to the extent we can to Nevada law, Knopfler held that, first of all, the foreclosure action in Knopfler was an affirmative foreclosure action filed in the court by the foreclosing party. I certainly wouldn't dispute that under Hawaii law or probably under Nevada law, that would be in-rem, an affirmative foreclosure action. Somebody's foreclosing on a piece of property to take the property. The case here is not an affirmative foreclosure action by my clients, the appellees. It is a wrongful foreclosure action filed after the fact by the plaintiff, appellant, and borrower, seeking legal relief as well as equitable relief, legal claims such as violation of statutes, injunctive relief, which is in personam, and damages, which is in personam. Counsel, Judge Gould with a question. Didn't they also have a count seeking to quiet title? Yes, they did, Your Honor, correct. So I have the same question for you as I pose to your colleague on the opposite side of the case. Should we certify to the Nevada Supreme Court whether unlawful detainer actions are in-rem or quasi-in-rem and whether an action to quiet title is quasi-in-rem or in-rem? Well, respectively, Your Honor, I don't think it needs to be certified. First of all, we do have a decision under Nevada law as to quiet title actions. Now, having said that, I want to back up a little bit. I would not characterize this action on appeal here today as predominantly a quiet title or even that the direct object is quiet title. If you're taking about ñ I understood that from your briefs, that you're viewing it as a wrongful foreclosure, primarily like a tort claim. But still, they did have a count to quiet title. So whatever it is primarily, if it has one count that's an in-rem count and another action is an in-rem action, if they're both in-rem, would that pose a conflict? It would if they were both in-rem. I would agree. But going back to what I was saying, we do have a decision under Nevada law that actually went up to the United States Supreme Court. And this Court has asked us to brief this case in another appeal that we have coming up in a few minutes under the exact same issue. Are you referring to Nevada versus U.S.? Nevada versus United States. And that's a 1983 opinion that was decided by the Federal District Court in Nevada, went up to the Ninth Circuit, and then it went up to the U.S. Supreme Court. And what the U.S. Supreme Court found is that quiet title actions are in personam. An exception in that case was found, rendering the particular claim in that case as in-rem. The particular claim was a prior adjudication of water rights in the Truckee River. The United States government, on behalf of Indian tribes, had brought an action against claimants to the water way back at the turn of the century. And there was an adjudication as to the water rights. Who was entitled to what rights in the Truckee River? When it went up to appeal on a subsequent action by new claimants to water rights, the Nevada courts and the United Supreme Courts found, well, it's a quiet title action as to the water rights. That's in personam. But under a strong public policy reasoning here, we've got to make this in-rem so that it can apply to everyone going forward as to those water rights. Was the Supreme Court, in addressing a quiet title being an in personam action, were they applying state substantive law or federal substantive law? Because it was a federal, based on a federal statute, and would that matter? That's correct. I think it was probably more federal emanating out of a Nevada river with Nevada property rights involved. I think the predominant issue was the United States government, on behalf of the Indian tribes, what their rights would be under the federal statute. So if it's federal law, would that dictate what Nevada substantive law should be for quiet title actions? I think it would because the United States Supreme Court said in this case that quiet title actions are in personam. That was the starting rule. Well, it might be persuasive to the Nevada Supreme Court, but surely it wouldn't bind them. Well, I think if we go back to this appeal, what the Knopfler decision said, what the Ninth Circuit said in Knopfler is if there is not a definitive decision from the state's highest court on this issue, all deference has to be given to the district court judge's ruling and order. And I think that's what we have here. What about Robinson? Is that a definitive decision from the Nevada Supreme Court? I don't think so. Why not? And I agree with opposing counsel. In 1897, the case was about a plaintiff versus a defendant, the plaintiff seeking to take title back after she had conveyed a trust deed to the defendant. Now, it wasn't a conventional deed of trust like we have with mortgage loans here today. It was a specific trust given to the defendant to do certain things, to administer the trust and to sell the property and distribute sums to certain people. I think it's distinguishable. That would certainly be in rim, I think, today, because you have a plaintiff essentially suing a defendant that she conveyed title to her property to, seeking to get title back. In this case, the appellant did not convey title to my clients. The appellant is not trying to now undo a conveyance of title from the appellant to my clients. It's a different situation. It's a different deed of trust. Well, it sounds to me, then, that you're basically suggesting that you want us to predict what Nevada law would be. You acknowledge that Robinson is not definitive on the issue. If we're going to follow principles of comedy, it seems to me that the suggestion that Judge Gould has made about certifying questions to the Nevada Supreme Court might be the appropriate remedy here so that we could act with sure knowledge of what the Nevada Supreme Court thinks Nevada law is on this, what turned out to be, with so many foreclosures in the state, a very, very important issue. Would you agree with that? I would agree with that, Your Honor. But at the same time, I would go back to the decision that was reached by the district court in this case. And if we're talking abstention based upon in rem versus in personam, that's an abusive discretion standard. We're really more talking, at least from my perspective, we're talking about the prior exclusive jurisdiction issue. Okay. It's not even an abstention. It's basically a clear doctrine that has been articulated by the U.S. Supreme Court in Klein v. Burke Construction Companies. But if you're agreeing, quiet title would be covered, what else would be covered in our certification to the Nevada Supreme Court? Well, I would take issue, I don't believe that you can legitimately find that an unlawful detainer or an eviction proceeding is in rem. There's nothing in rem about it in Nevada. It's simply to evict tenants out of property. The issue is possession and occupancy. You can't adjudicate title in an eviction proceeding. You can't recover damages in an eviction proceeding. So from your perspective, that's settled law in Nevada? I believe so, and that's statutory. What Nevada case would you cite for that proposition? There is not a case. I think there, if it were otherwise, there would be a whole host of cases saying that evictions are not. This is one that's so obvious that nobody would litigate. I believe so. But it's a statutory proceeding. In the statutes, it clearly defines an eviction as possession and occupancy. That's why you have to serve the tenants. If it were in rem, you really wouldn't have to serve the tenants. You could just publish, like we have in the Robinson v. Kine case. One other question about jurisdiction. Your opposing counsel has raised the issue of the amount in controversy. I know we asked you to give us a 28-J letter in response to the issue, but do you have any initial thoughts on that point? What does the bank cite as the basis for getting to the $75,000 figure? In our notice removal, real quickly, I see I'm running short on time. We can give you the time on this issue. In the notice of removal itself, we cite Brady v. Mercedes Benz, which cites to the Glenwood decision, and that's in the excerpts of the record at page, looks like, 68. If you want to talk about the two- or three-paragraph quiet title claim that they added onto their wrongful foreclosure complaint, they're seeking to get title back to their property after the foreclosure's already occurred. If you look at the recorded notice of sale and the recorded trustee's deed upon sale, the value of the property or the amount of the foreclosure was far in excess of $75,000. What was the amount of the deed of trust on the property? The original deed of trust. No, the amount that was owed at the time of the foreclosure. $341,000. Okay. So that in and of itself would arguably be an amount of controversy, right? It would, and I would also add that the complaint does seek damages and punitive damages, as the Court has pointed out. Okay. Unless either of my colleagues have questions, we will thank you for your presentation. And although we had you run over, Mr. Giles, we'll give you a minute to respond, if you like. Thank you so much. I think it is absolutely essential that you certify the question of whether a notice of default, an NOD, can be filed in Nevada with the substitution of trustee being filed months later like it was in this case. That's a whole different issue, is it not? I think what Judge Gould was talking about, and he obviously can speak for himself, was what is the nature of a quiet title action under Nevada law? Is it in REM? Is it in personam? What other issue are you talking about? I mean, we don't want to get into the other issue, I don't think, because that's really not essential for our decision in this case. Well, the complaint raised the irregularity of the sale. One of the irregularities of this sale that's an unsettled question of Nevada law is whether or not the substitution of attorney can be filed months after the NOD. That was the subject matter of Judge Hunt's decision. Five federal judges have said it's okay, and there's some very good reasons to assert that it's not. It's simply an open question before the Nevada Supreme Court. Why do you feel it's essential to decide this case, even if it goes back to the Nevada court? Because then the foreclosure has to be avoided. The foreclosure sale was not in substantial compliance with Nevada law as required by 1070805C, I think it is. Well, the real question here, at least as I see it, Mr. Giles, is whether we have this case at all. If we did what you suggested and the opposing counsel seems to agree with, the Nevada Supreme Court would say this is in REM or it's in personam. If it says it's in REM, then prior exclusive jurisdiction doctrine may just take the whole case right out of our hands and go back to Nevada courts to resolve the issue, and we wouldn't even get to the point you're talking about. Correct. But if they go the other way, then you could very well affirm Judge Jones and my client would lose his house, even though there's a defect in the foreclosure which was raised in the complaint. Any other questions by my colleagues? What about the $341,000 that was owed at the time of the foreclosure? Why wouldn't that satisfy the amount of controversy? We're not asking that that be forgiven or canceled or anything else. We're not asking for a free house. We're asking that the foreclosure be undone, that they go forward and do it right, and what will they have lost if they do it that way, a year, a year and a half's worth of payments? Counsel, do you have any precedent that you can point to that would say the amount in controversy does not include that full amount of the mortgage foreclosed upon that Judge St. Eve's asking about, but rather, as I understand you're saying, it should be a net amount, take that amount, but you guys would agree you still owe a certain amount. Do you have any precedent? I don't. On its face, the action involves a controversy that seems to cover more than the required limits. I don't have any precedent, Your Honor. If he was asking that the mortgage be canceled, that the $341,000 be forgiven, which was not requested, then sure, we're over the 75. That's not what he was asking. Very good. I think we have your points, and we thank you both for your presentation. The case of Chapman v. Deutsche Bank National Trust Company is submitted.
judges: St. Eve, Gould, Smith M.